# RECORD IMPOUNDED

## NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4043-24

IN THE MATTER OF THE
CIVIL COMMITMENT OF
M.B.,[1] SVP-833-22.

_____

Submitted May 14, 2026 – Decided July 31, 2026

Before Judges Mawla and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. SVP-833-22.

Jennifer N. Sellitti, Public Defender, attorney for appellant M.B. (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Jennifer Davenport, Attorney General, attorney for respondent State of New Jersey (Sookie Bae-Park, Assistant Attorney General, of counsel; Stephen Slocum, Deputy Attorney General, on the brief).

PER CURIAM

---

[1]  We use initials to refer to appellant pursuant to N.J.S.A. 30:4-27.27(c) and Rule 1:38-3(f)(2).

M.B. appeals from a judgment ordering his indefinite civil commitment to the Special Treatment Unit (STU) as a sexually violent predator under the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. He contends the State failed to carry its burden he was likely to reoffend if he was not committed. After reviewing the record, in light of the governing legal principles, we conclude that the commitment order is supported by substantial credible evidence and affirm.

I.

M.B. has a history of sexual offenses. In 1980, he was arrested in Florida for the sexual assault of a ten-year-old girl, whose mother he was in a relationship with. He was subsequently sentenced to probation. In 1989, he was convicted in New York for lewd and lascivious acts after soliciting two underage boys to engage in oral sex. He pleaded no contest and was sentenced to two years' probation.

In 2002, M.B. was arrested in New Jersey and charged with two counts of fourth-degree child abuse, N.J.S.A. 9:6-1 and 6-3; two counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); and four counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a). It was alleged M.B. committed

2

A-4043-24

these offenses while staying with the victim's family, beginning when the victim was five or six years old and continuing until he was eleven.

Approximately two years later, on June 29, 2004, M.B. was found not guilty by reason of insanity, pursuant to N.J.S.A. 2C:4-8. He was placed on Krol[2] review status and committed to the Ann Klein Forensic Center (AKFC), where he remained until 2022, and received sexual offender treatment from 2005 until 2013.

On June 29, 2022, M.B. was transferred to the STU following a referral for civil commitment from AKFC. The State subsequently petitioned for his involuntary civil commitment pursuant to the SVPA. Commitment hearings were held on May 22 and July 24, 2025.

At the hearing, the State presented two expert witnesses: forensic psychiatrist Dr. Roger Harris and clinical psychologist Dr. Paul Dudek. Dr. Harris conducted two interviews with M.B., reviewed court documents, psychological evaluations, disciplinary records, and reports from AKFC. M.B.

---

[2] A criminal defendant acquitted by reason of insanity may be involuntarily committed or conditionally released under judicial supervision, with periodic hearings (Krol hearings) to determine whether continued commitment or supervision is warranted, based on the defendant's mental illness and risk of danger to self or other. See State v. Krol, 68 N.J. 236, 255-56 (1975). A person committed under these circumstances is described as on Krol status.

A-4043-24

denied having any interactions with the boys in 1989 and did not take responsibility for the remaining sexual offenses. This demonstrated M.B. had not reduced his risk of reoffending through treatment and appeared "treatment naive."

Dr. Harris diagnosed M.B. with pedophilic disorder, based on his multiple offenses against children; borderline personality disorder, due to his fluctuating moods, cognitions, and impulsive behavior; and substance abuse disorder, given his three prior convictions of driving while intoxicated. Dr. Harris opined the pedophilic disorder predisposed M.B. to commit sexual violence of acts.

M.B. incurred disciplinary infractions at AKFC, which were viewed as possibly having a sexual motive by Dr. Harris. These infractions included alleged grooming of younger-looking residents, masturbation in view of another person, and possession of a picture of clothed children that appeared to be cut from a magazine.

Dr. Harris also noted M.B. scored a two on the Static-99R, the actuarial tool used to measure risk of sexual recidivism. This score placed him in the category of individuals considered to be at average risk of committing a sexual offense following their release. This score reflects various historical factors in M.B.'s record, including offending while on supervision, failing supervision,

A-4043-24

exhibiting remarkable sexual preoccupation, poor self-regulation, poor cognitive problem solving-skills, and general lifestyle impulsivity.

Dr. Harris testified M.B.'s age of sixty-six was a mitigating factor in assessing his risk for sexual recidivism. However, he concluded M.B. would have serious difficulty controlling his behavior, and would be at a high risk of sexually reoffending if not confined to the STU.

Dr. Dudek likewise concluded M.B. would be a high risk to reoffend if not confined to the STU. He also testified M.B.'s history showed an ongoing attraction to prepubescent children, which sometimes involved a caretaker role around his victims. Dr. Dudek noted M.B. had received offender-specific treatment at the AKFC; however, he had not developed the skills to reduce his risk of reoffending.

Dr. Dudek diagnosed M.B. with pedophilia, noting his arousal and attraction to prepubescent children, as well as other specified personality disorders with borderline and anti-social traits, and alcohol abuse disorder. He opined M.B. is predisposed to sexual violence due to his mental or personality disorder. M.B.'s score of two on the Static-99R and thirteen out of twenty-six on the Stable-2007 both indicated a "high range" of dynamic risk factors, including antisociality, poor problem-solving, negative emotionality, deviant

A-4043-24

sexual preferences, unstable relationships, lack of empathy, impulsivity, and non-cooperation with supervision.

M.B. presented the testimony of psychologist Dr. Christopher Lorah, who interviewed him on five occasions between 2022 and 2025 and reviewed his treatment records. Dr. Lorah diagnosed M.B. with pedophilic disorder. On the Static-99R, M.B. received a score of three, placing him in the "average" risk category for sexual reoffending.

Dr. Lorah opined M.B.'s risk of sexual reoffense would "fall below the highly likely level given placement at a residential facility." He testified the risk decreased with M.B.'s age and provided examples of release conditions, which would mitigate M.B.'s risk: a supervised group home, mandatory group and individual sex offender therapy, parole supervision, drug testing, and ongoing contact with the SVPA treatment team.

On July 24, 2025, the trial court found the State had proven by clear and convincing evidence M.B. met the criteria for civil commitment under the SVPA and ordered his indefinite commitment to the STU. It found both State expert witnesses credible, and their testimony was consistent with supporting reports. The court concluded M.B. had not meaningfully participated in the sex offender

6

treatment, and as a result, had not benefitted from it. It further found M.B. was highly likely to sexually reoffend if not committed.

The court noted Dr. Lorah testified credibly that, without conditions, M.B. is "substantially unable to control his sexually harmful behavior," and was not persuaded by the testimony suggesting M.B. could be safely managed in the community with conditions. It determined a conditional discharge plan would not sufficiently mitigate M.B.'s risk.

On appeal, M.B. presents the following contention for our consideration:

> THE COMMITMENT COURT SHOULD NOT HAVE COMMIT[T]ED M.B. BECAUSE THE STATE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT HE WAS HIGHLY LIKELY TO SEXUALLY REOFFEND IF NOT CIVILLY COMMITTED.

Our review of a trial court's determination for civil commitment under the SVPA is "extremely narrow." In re Civ. Commitment of R.F., 217 N.J. 152, 174 (2014) (quoting In re D.C., 146 N.J. 31, 58 (1996)). We "should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake,'" and there is a clear abuse of discretion. Id. at 175 (quoting D.C., 146 N.J. at 58); see also In re Civ. Commitment of A.Y., 458 N.J. Super. 147, 166 (App. Div. 2019). Courts that hear civil commitment cases are considered "specialists" and "their expertise in the subject" is entitled to a

A-4043-24

"special deference."  R.F., 217 N.J. at 174; see also In re Civ. Commitment of J.S., 467 N.J. Super. 291, 303 (App. Div. 2021).

"The appropriate inquiry is to canvass the significant amount of expert testimony in the record and determine whether the lower courts' findings were clearly erroneous."  D.C., 146 N.J. at 58-59.  If a "trial court's findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed."  R.F., 217 N.J. at 175 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

The SVPA permits the State to involuntarily commit individuals convicted of a sexually violent offense "who 'suffer[] from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care[,] and treatment.'" Id. at 173 (quoting N.J.S.A. 30:4-27.26).  The State must establish:

> (1) that the individual has been convicted of a sexually violent offense; (2) that [they] suffer[] from a mental abnormality or personality disorder; and (3) that as a result of [their] psychiatric abnormality or disorder, "it is highly likely that the individual will not control [their] sexually violent behavior and will reoffend."
>
> [In re Civ. Commitment of W.W., 245 N.J. 438, 450 (2021) (quoting In re Civ. Commitment of D.Y., 218 N.J. 359, 380-81 (2014)).]

A-4043-24

At the commitment hearing, M.B. stipulated to the first prong—he had been acquitted by reason of insanity of a qualifying offense—and to the second prong, acknowledging he suffered from pedophilic disorder, which constituted a mental abnormality under the SVPA statute. Therefore, our focus on appeal is the third prong: whether M.B. poses a risk of reoffending if not confined to the STU.

We are satisfied the court carefully considered the experts' testimony and documentary evidence. In doing so, it determined the State demonstrated M.B. "is and remains a high risk to reoffend . . . and requires additional treatment to be able to embrace and develop proper coping mechanisms." Based on our review of the record, we conclude there is substantial credible evidence in the record to support these findings. We discern nothing in the court's findings or analysis to be clearly erroneous.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

9                                                                                    A-4043-24